# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| MEG A. VOLKER,<br><br>Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>Defendant. | No. 17-CV-2025-LTS<br><br>**REPORT AND<br>RECOMMENDATION** |

Plaintiff, Meg A. Volker ("claimant"), seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability and disability insurance benefits under Title II of the Social Security Act. Claimant contends that the Administrative Law Judge ("ALJ") who heard her claim erred in determining that claimant was not disabled.

For the reasons that follow, I recommend that the District Court **affirm** the ALJ's decision.

## I. BACKGROUND

I adopt the facts set forth in the parties' Joint Statement of Facts (Doc. 12) and therefore only summarize the pertinent facts here.[1]

---

[1] Claimant filed an individual statement of facts. (Doc. 11). The Joint Statement of Facts, however, provides that the Joint Statement of Facts "displaces the prior proposed statement of facts filed solely by [claimant]." (Doc. 12, at 1). Thus, I have not considered claimant's individual statement of facts.

Claimant alleged she became disabled on May 24, 2012.  (AR 11).[2]  The ALJ found that claimant last met the insured status requirement of the Social Security Act on December 31, 2015.  (AR 12).  Claimant was forty-seven years old when she allegedly became disabled and was fifty-one years old on the date last insured.  (AR 17).  Claimant completed high school, earned a college degree in elementary education, and worked as a teacher.  (AR 17; Doc. 12, at 7).

On June 3, 2010, claimant filed an application for disability and disability insurance benefits.  (AR 101).  That claim was ultimately denied and claimant was determined not to be disabled.  (AR 101-08).  The Court has no record of claimant appealing that decision to this Court.  On February 10, 2014, claimant filed a new application for disability and disability insurance benefits.  (AR 11).  The Social Security Administration denied the claim initially and on reconsideration.  (AR 118-39).  Claimant now appeals this second decision.  On October 6, 2015, an ALJ held a hearing on the matter.  (AR 11).  On March 14, 2016, ALJ Eric S. Basse issued a decision finding claimant was not disabled.  (AR 11-19).  On March 8, 2017, the Appeals Council denied review.  (AR 1-6).  The ALJ's decision therefore became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.

On May 9, 2017, claimant timely filed the instant complaint in this Court.  (Doc. 2).  By November 28, 2017, the parties had fully briefed the issues.  (Docs. 13, 15).  On December 13, 2017, the Court deemed this case fully submitted and ready for decision.  On the same day, the Honorable Leonard T. Strand, Chief United States District Court Judge, referred this case to a United States Magistrate Judge for a Report and Recommendation.

---

[2] "AR" refers to the administrative record below.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to her physical or mental impairments, "[she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. (*Id*. § 404.1572). "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit. (*Id*.).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id*. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not

disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. 404.1521 (2015).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do her past relevant work, then she is considered not disabled. (*Id.*). Past relevant work is any work the claimant performed within the fifteen years prior to her application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. (*Id.* § 416.960(b)). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite . . . her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted). The RFC is based on all relevant evidence.

4

The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2). The Commissioner must show not only that the claimant's RFC will allow her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of fairly and fully developing the record before making a determination about the existence of a disability. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III.    THE ALJ's FINDINGS

The ALJ made the following findings at each step with regard to claimant's disability status:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since claimant's alleged onset date. (AR 12). The ALJ noted that although claimant did work after her alleged onset date, her earnings did not amount to the level required to be considered substantial gainful activity. (*Id.*).

At Step Two, the ALJ found that claimant suffered from the severe impairments of "degenerative disc disease, status post surgery; thoracic outlet syndrome." (*Id.*).

At Step Three, the ALJ found that none of claimant's impairments met or equaled a presumptively disabling impairment listed in the regulations. (AR 13).

At Step Four, the ALJ found that claimant had the RFC to perform sedentary work with the following restrictions:

> she can lift 10 pounds occasionally and less than 10 pounds frequently. She can sit for 8 hours of an 8-hour workday with standard work breaks. She can stand and walk 2 hours total of an 8-hour workday. She can occasionally climb ramps and stairs, balance, stoop, kneel, and crouch. She should avoid ladders, ropes, scaffolds, and crawling. She may occasionally reach overhead with both arms. She may frequently reach in every other direction. She should avoid concentrated exposure to vibrations and hazardous conditions such as dangerous moving machinery. She can frequently handle and finger with her upper extremities bilaterally. She is limited in her ability to turn her head 30° in each direction.

(AR 13). Also at Step Four, the ALJ found claimant "acquired work skills from past relevant work concerning maintaining records as based on the testimony of the vocational expert." (AR 18).

At Step Five, the ALJ found that, despite claimant's RFC, there were jobs that existed in significant numbers in the national economy that claimant could still perform, including receptionist, appointments clerk, and addresser. (*Id.*). Therefore, the ALJ concluded that claimant was not disabled. (AR 19).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645 (internal quotation marks omitted). The Eighth Circuit Court of Appeals explains the standard as "something less

than the weight of the evidence . . . [that] allows for the possibility of drawing two inconsistent conclusions[;] thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*,

958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V. DISCUSSION

Claimant alleges the ALJ committed reversible error by: 1) failing to properly evaluate treating source statements; 2) not evaluating claimant's migraines and severe headaches as impairments; 3) not finding claimant disabled under the medical-vocational guidelines; and 4) assessing claimant with an RFC that was not supported by substantial evidence on the record as a whole. (Doc. 13, at 13-20). I will address each issue in turn.

### A. *Evaluation of Treating Source Statements*

Claimant first argues that the ALJ erred in not granting more weight to the opinions of Roberta Mittelsted, A.R.N.P., CMC. (Doc. 13, at 13-16). In support of this argument, claimant turns to 20 C.F.R. § 404.1527(c) (2016) and states that Ms. Mittelsted's opinions should have been afforded more weight because of the lengthy treatment relationship Ms. Mittelsted shared with claimant, the supportability of Ms. Mittelsted's opinions, and the consistency of Ms. Mittelsted's opinions. (*Id.*).

Under the relevant regulations, a nurse practitioner, such as Ms. Mittelsted, is "considered an 'other' medical source of evidence." *Blackburn v. Colvin*, 761 F.3d 853, 859 (8th Cir. 2014). "Evidence from other medical sources is evaluated based on various factors including the examining or treatment relationship, length of the relationship, frequency of examination, supportability, and consistency." *Id.* This does not, however, mean that Ms. Mittelsted's opinion is inherently entitled to controlling weight. *See id.* Rather, where a medical source renders inconsistent opinions that undermine the source's

8

credibility, the source's opinion may be discounted or disregarded. *Id.* at 860 (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).

Here, the ALJ discounted Ms. Mittelsted's opinions because Ms. Mittelsted's opinions were inconsistent with her own treatment notes, the opinions "relie[d] on complete acceptance of the claimant's allegations concerning the existence, persistence and intensity of symptoms and functional limitations," which the ALJ separately discounted, and because Ms. Mittelsted's opinions were inconsistent with the other evidence of record. (AR 16). Assuming the ALJ's rationale is sound, the regulations and case law would have permitted the ALJ to discount Ms. Mittelsted's opinions, even in light of the factors claimant alleges should have been taken into account. Thus, if I find that the ALJ's reasons for discounting Ms. Mittelsted's opinions are supported by the record, it follows that I should find that the ALJ did not err in this respect.

The ALJ's specific findings with respect to Ms. Mittelsted's opinions are as follows:

> For one thing, the opinions are not supported by signs and findings consistent with the degree of limitation indicated. The findings are inconsistent with her own treatment notes which do not show persistent edema. Treatment notes do not show objective observation of balance difficulties or persistent complaints of balance difficulties. The nurse practitioner opined the claimant cannot kneel, crouch, or crawl because it involves bending the neck. Kneeling and crouching do not implicate bending the neck—kneeling is described as "bending the legs at the knees to come to rest on one or both knees" and crouching is defined as "bending the body downward and forward by bending both legs and spine." The opinion relies on complete acceptance of the claimant's allegations concerning the existence, persistence and intensity of symptoms and functional limitations[,] which the record as a whole and inconsistencies establish are not entitled to full credibility and are an underrepresentation of function. The opinions are inconsistent with other evidence and inconsistencies in the record as a whole which the treating nurse practitioner did not have available."

9

(AR 16 (citations omitted)).  The ALJ goes on to detail an instance in July 2015, in which claimant alleged "she was weak and numb in her left arm," but those allegations were not supported by Ms. Mittelsted's exam.  (AR 16).  The purpose for which the ALJ recounts this instance is not readily apparent.  Based on my understanding of the ALJ's analysis, the ALJ could have intended this instance to be an example used in discounting claimant's credibility, or it could have been intended to show an instance in which Ms. Mittelsted accepted claimant's allegations as true, even absent medical support.

Regardless of the purpose for which the ALJ intended this information, I find that it is probative on the issue of whether Ms. Mittelsted simply adopted claimant's subjective allegations when completing her medical source statements.  Ms. Mittelsted completed a medical source statement on October 20, 2015, at which time she offered that claimant could lift and/or carry fewer than ten pounds occasionally.  (AR 1046).  When asked to explain her answer, Ms. Mittelsted wrote "Significant complaints of neck pain & left arm burning pain."  (*Id.*).  Ms. Mittelsted provided the same explanation for her assessment that claimant could lift and/or carry fewer than ten pounds frequently.  (*Id.*).  This suggests that Ms. Mittelsted's limitation of lifting and/or carrying ten pounds is based strictly on claimant's complaints of neck and arm pain.  Further, claimant does not contest the ALJ's finding that claimant's July 2015 complaints of pain and weakness were unsupported by Ms. Mittelsted's examinations.  This supports the ALJ's decision to give Ms. Mittelsted's opinions less weight.

Claimant does not contest the ALJ's findings that Ms. Mittelsted's opinions were internally inconsistent, were inconsistent with other evidence of record, and, at times, merely reflected claimant's own subjective allegations, as reported to Ms. Mittelsted.  Based on my findings regarding Ms. Mittelsted's opinions and claimant's seeming acceptance of the substantive accuracy of the ALJ's reasons for discounting Ms.

Mittelsted's opinions, I am persuaded that the ALJ properly discounted the weight afforded to Ms. Mittelsted's opinions.

### B. *Migraines and Severe Headaches as Impairments*

Claimant next argues that the ALJ failed to recognize claimant's migraines and severe headaches as impairments. In support thereof, claimant cites to numerous instances in the record reflecting claimant's reports of headaches and/or migraines. (Doc. 13, at 16-17). These citations, however, are entirely to records that were created prior to claimant's alleged disability onset date. (*Id.*, citing to records at AR 867 (Oct. 20, 2009), 870 (Jan. 11, 2010), 879 (Dec. 18, 2009, documenting cervical discectomy), 892 (Sept. 9, 2010), 925 (May 9, 2012), 928 (Oct. 26, 2011), and 930 (Nov. 23, 2011)). Although these prior records could be relevant for certain purposes and could be probative on whether a claimant is disabled, they are not enlightening in this case because the ALJ who decided claimant's previous application for benefits presumably considered the body of prior instances to which claimant now cites and claimant has brought forth no new evidence that requires consideration anew." *See Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007) (holding that an ALJ "*may* consider all evidence of record, including medical records and opinions dated prior to the alleged onset date, when there is no evidence of deterioration or progression of symptoms.") (emphasis original). The only citation claimant provides that is not to a record created prior to the alleged onset date is a citation to Ms. Mittelsted's opinion, which I have discussed *supra*.

In this opinion, Ms. Mittelsted opined that claimant "must move every 10 minutes" and that claimant needed to be able to alternate positions because if claimant were required to sit for six hours out of an eight-hour day, "This will increase [headaches] & neck pain." (AR 1046). Ms. Mittelsted further opined in that same opinion "working would most Likely increase her [headache] frequency, though she currently states [she is] having [headaches] everyday." (AR 1047). I have already determined that the ALJ

11

properly discounted the weight afforded to Ms. Mittelsted's opinions. Further, Ms. Mittelsted explicitly provided in her latter opinion that her determination of claimant's headache frequency was significantly influenced by claimant's own reports. This is one of the bases upon which the ALJ discounted Ms. Mittelsted's opinion which, once again, reinforces that the ALJ properly discounted Ms. Mittelsted's opinions.

Because the only evidence from the relevant time period that claimant has brought forth is Ms. Mittelsted's opinion and because that opinion has been properly discounted, claimant's argument as to her migraines and severe headaches must rest almost exclusively on evidence from a time prior to the relevant period. The ALJ apparently did not find Ms. Mittelsted's opinion to be weighty enough, in combination with the pre-existing evidence, to establish claimant's migraines and severe headaches as impairments. Nor do I. As such, I recommend that the District Court find that the ALJ did not err in failing to consider claimant's migraines and severe headaches as impairments.

### C. *Medical-Vocational Guidelines*

Claimant next argues that the ALJ should have found her disabled under the medical vocational guidelines, specifically 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 201.14. (Doc. 13, at 17-18). In support of this argument, claimant asserts that she meets the requirements of Rule 201.14 "due to [her] migraines and severe headaches as well as her medications limit her ability to perform [the work skills the ALJ's assessed claimant retained]." (*Id.*). With respect to the migraines and severe headaches, claimant largely relies on her argument that the ALJ erred in failing to assess the migraines and severe headaches as impairments. I have already rejected this argument and do not find it any more persuasive in this context.

With respect to medications, claimant does not explain how they limit her ability to work. Claimant's citation to the record here references Ms. Mittelsted's statement that claimant must take "narcotic medication which interferes [with] her ability to

function," which, consequently, renders claimant unable to work on a sustained basis. (Doc. 13, at 18; AR 989). This opinion was rendered on May 17, 2012, one week before claimant's alleged onset date, and, therefore, does not necessarily reflect claimant's condition during the relevant period. Furthermore, I have already discussed the ALJ's discounting of Ms. Mittelsted's opinions and found that the ALJ properly did so. Finally, even if Ms. Mittelsted's opinion that claimant was unable to work on a sustained basis were entitled to any weight, Ms. Mittelsted has provided no support for this assertion, other than the statement that claimant's narcotic medications interfere with claimant's ability to function. (AR 988-89). In any event, the ALJ could properly disregard this opinion because it invaded the Commissioner's province. *See House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007) ("A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination."). For these reasons, I find claimant's argument with respect to her narcotic medications to be of no aid in addressing claimant's argument that she is disabled under the medical-vocational guidelines.

Because claimant's argument that she is disabled under the medical-vocational guidelines is based entirely on false premises, I find that this argument is without merit. Even if, however, I were willing to accept claimant's contentions, I would still reject claimant's argument. Rule 201.14 provides that if an individual is "closely approaching advanced age," has at least a high school education that does not provide for direct entry into skilled work, and has previous skilled or semiskilled work experience, but is unable to transfer those skills to other employment, the individual should be found disabled. Rule 201.15, however, maintains the same criteria, with the exception of the final consideration. Where an individual has skilled or semiskilled past work history and is able to transfer those skills to other employment, the individual should be found not disabled.

13

Case 6:17-cv-02025-LTS-CJW   Document 17   Filed 05/18/18   Page 13 of 16

The parties agree that claimant was closely approaching advanced age. (*See* Docs. 13, at 17; 15, at 16). The parties likewise agree that claimant has a college education, which is greater than a high school education, but the Commissioner maintains that it is unknown whether claimant's education provided for direct entry into skilled work. (*Id.*). The parties disagree as to the third prong, however. Claimant contends that because of her migraines, severe headache, and narcotic medication, she is limited in her ability to perform any potentially transferable work skills. (Doc. 13, at 17-18). As set forth, *supra*, I reject this argument. Furthermore, the ALJ found that claimant's past relevant work in maintaining records constitutes a transferable skill. (AR 18). Notably, claimant does not dispute that this is a transferable skill. Rather, claimant's only argument is that she cannot perform this skill because her headaches, migraines, and medication preclude her from performing *any* work. (Doc. 13, at 17-18). As I have rejected this argument, and as claimant does not contest the ALJ's finding of transferable work skills, I find that Rule 201.14 does not control. Rather, if claimant were to be considered under any of the medical-vocational guidelines, Rule 201.15, which provides for a finding of not disabled, would be more appropriate. As such, I recommend that the District Court reject claimant's argument as to Rule 201.14.

### D. *Substantial Medical Evidence*

Claimant's final argument is that the ALJ's decision is not supported by substantial medical evidence on the record as a whole. (Doc. 13, at 18-20). I disagree.

Where an ALJ does not rely on opinions from treating or examining sources, there must be some other medical evidence in the record for the ALJ's opinion to be supported by substantial medical evidence on the record. *Harvey v. Barnhart*, 368 F.3d 1013, 1016 (8th Cir. 2004). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

Claimant relies on the opinions of Ms. Mittelsted and Keith Barnhill, A.R.N.P., in arguing that the medical evidence supports a different residual functional capacity finding. (Doc. 13, at 18-20). I will not discuss, yet again, why I find that the ALJ properly discredited Ms. Mittelsted's opinions. As noted above, as registered nurse practitioners, neither Ms. Mittelsted's opinions nor Mr. Barnhill's opinions are entitled to controlling weight. Thus, the question is not whether the ALJ should have adopted the restrictions Ms. Mittelsted and Mr. Barnhill recommended, but rather whether the ALJ's decision was supported by some medical evidence on the record.

I find that it was. The ALJ turned to claimant's own reported symptoms in supporting his opinion and also obtained the opinions of two reviewing physicians. (AR 15-17). This is sufficient to meet the "some medical evidence standard." *See Buford v. Colvin*, 824 F.3d 793, 797 (8th Cir. 2016) (upholding an ALJ's decision that claimant was not disabled where the decision was supported by the opinions of state agency consultants but not treating or examining sources). In reviewing the record evidence, I find no error in the ALJ's assessment of claimant's RFC and, ultimately, the ALJ's finding of no disability. I therefore recommend that the District Court find that the ALJ's decision was supported by substantial evidence on the record as a whole.

## VI.    CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm** the ALJ's decision.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo*

review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 18th day of May, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa